IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 06-cr-00390-WYD-01

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.      FERREN S. RAJPUT,

        Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States, by and through Matthew T. Kirsch, Assistant United States Attorney for the District of Colorado, and the defendant, Ferren S. Rajput, personally and by counsel John A. Chanin, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

1.      The defendant will plead guilty to Counts 1 and 2 of the information, charging him with failing to truthfully collect, account for, and pay over tax, in violation of Title 26, United States Code, Section 7202, and failing to pay tax, in violation of Title 26, United States Code, Section 7203, respectively. The defendant agrees to execute a separate, written waiver of his right to indictment by a grand jury on the charge in Count 1.

2.  The defendant agrees to pay the $100 special monetary assessment applicable to Count 1 and the $25 special monetary assessment applicable to Count 2, for a total of $125, at or before the time of sentencing.

3.  The United States Attorney's Office for the District of Colorado (the government) agrees that it will file no other federal criminal charges against the defendant based on matters currently known to the government.

4.  The government agrees that it will recommend a sentence at the bottom of the applicable sentencing range as determined by the United States Sentencing Guidelines. The defendant reserves the right to seek a lower sentence based on other factors identified in 18 U.S.C. § 3553(a).

5.  The government agrees not to oppose a request by the defendant for a continuance of his sentencing date for approximately six months.

6.  The government agrees that, depending on the circumstances at the time of sentencing, the defendant may be eligible for a downward departure and/or sentencing variance based on his efforts to make restitution.

7.  The parties agree that the defendant will be liable for restitution in the amount of the outstanding tax liabilities related to Altus Financial, Inc. and created by the relevant conduct described below, to be determined at the time of sentencing.

8.  This plea agreement is made pursuant to Rule 11(c)(1)(A) and (c)(1)(B) of the Federal Rules of Criminal Procedure.

## II. MAXIMUM STATUTORY PENALTIES

9. The maximum statutory penalty for the offense in Count 1 is: not more than five years of imprisonment, not more than a $250,000 fine (plus costs of prosecution), or both; not more than 3 year of supervised release; restitution, and; a $100 special assessment fee.

10. The maximum statutory penalty for the offense in Count 2 is: not more than one year of imprisonment, not more than a $100,000 fine (plus costs of prosecution), or both; not more than 1 year of supervised release; restitution, and; a $25 special assessment fee.

11. A prison sentence may be imposed for violation of the supervised release. Costs of supervision and/or incarceration may also be imposed. The conviction may also cause the loss of certain civil rights, such as the right to possess firearms, to vote, to hold elective office, and to sit on a jury.

## III. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

12. The parties agree that there is no dispute as to the material elements which establish a factual basis for the offenses of conviction. The defendant understands that in order to prove his guilt as to Count 1, the government must prove, beyond a reasonable doubt, that:

    A. The defendant had a duty to collect, account for, or pay over a tax;

    B. The defendant failed to collect, account for, or pay over that same tax; and

    C.      The defendant acted willfully, that is, by voluntarily and intentionally violating a known legal duty.[1]

The defendant understands that in order to prove his guilt as to Count 2, the government must prove, beyond a reasonable doubt, that:

    A.      The defendant had a duty to pay a tax;

    B.      The tax was not paid at the time required by law; and

    C.      The defendant acted willfully, that is, by voluntarily and intentionally violating a known legal duty.[2]

13.     Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties stipulate are relevant, pursuant to §1B1.3, for computing the appropriate guideline range.

14.     The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

---

[1] *See United States v. Thayer*, 201 F.3d 214, 219-20 (3d Cir. 1999).

[2] *United States v. Tucker*, 686 F.2d 230, 232 (5th Cir. 1982).

15.  The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§1B1.3) began is approximately January 1, 2002.

16.  The parties agree that the government's evidence would be:

In December 2000, Ferren S. Rajput formed a mortgage brokerage company called Altus Financial, Inc (Altus). Mr. Rajput was the President, Treasurer, and sole shareholder of Altus. Mr. Rajput also had sole signatory authority for all bank accounts in Altus's name. In these capacities, Mr. Rajput maintained the accounting records for Altus, handled payroll for Altus, worked directly with multiple accountants to prepare Altus's Forms 941, Employer's Quarterly Federal Tax Returns, and signed some of the Forms 941 submitted by Altus to the IRS. Immediately before Mr. Rajput formed Altus, he had been the President and CEO of Equitex Consulting Corporation (Equitex) and had handled the finances, bookkeeping, and accounting for Equitex. When Mr. Rapjut left Equitex, it had accumulated approximately $285,000 in federal tax liabilities based on its failure to pay over employment taxes withheld from its employees. Once at Altus, Mr. Rajput filed Altus's Forms 941 but willfully failed to pay over both the employees' and employer's portions of Federal Income Tax Withholding, Social Security, and Medicare taxes for 7 quarters: 2002-06, 2002-09, 2002-12, 2003-03, 2003-06, 2003-09, and 2003-12.

Mr. Rajput previously had made some employment tax payments to the IRS on

behalf of Equitex prior to forming Altus. In September of 2000, an IRS Revenue Officer met with Mr. Rajput and explained his duty to make quarterly federal tax payments on behalf of Equitex. Mr. Rajput made some such payments for Altus until 2002-06. When a second Revenue Officer contacted Mr. Rajput in September of 2003, Mr. Rajput indicated that he understood his duty to make federal tax payments on behalf of Altus. One of Altus's accountants, James McGehee, also repeatedly told Mr. Rajput that he needed to pay Altus's employment taxes.

The Altus Forms 941 for the quarters 2002-06 through 2003-09 were prepared by Mr. McGehee. Mr. McGehee relied on information provided by Mr. Rajput to prepare these forms. Mr. McGehee also complied with Mr. Rajput's request that the reporting of wages for employees specified by Mr. Rajput be deferred from the two middle quarters of 2002 until 2002-12. The Altus Form 941 for 2003-12 was prepared by accountant Gene Fuehrer. Mr. Fuehrer relied on information provided by Mr. Rajput to prepare this form. During the first three quarters of 2003, Mr. Rajput post-dated approximately 528 wage checks in Altus's records so that the wages and the accompanying tax liability would be deferred until the 2003-12 Form 941. Mr. Rajput did not tell Mr. Fuehrer about these post-dated checks. The chart below summarizes the relevant figures and tax loss (after payments made during the relevant period) for the seven quarters at issue:

| Quarter | Total Wages | FITW | SS-employee | Med-employee | SS-employer | Med-employer | Total Tax Loss |
|---------|-------------|------|-------------|--------------|-------------|--------------|----------------|
| 2002-06 | $ 595,249 | $102,151 | $34,853 | $ 8,631 | $34,853 | $ 8,631 | $189,119 |

6

| 2002-09 | $ 742,507 | $101,035 | $45,793 | $10,766 | $45,793 | $10,766 | $214,153 |
|---|---|---|---|---|---|---|---|
| 2002-12 | $1,043,473 | $ 44,511 | $45,072 | $15,130 | $45,072 | $15,130 | $164,915 |
| 2003-03 | $ 943,607 | $ - | $ 4,536 | $13,682 | $58,504 | $13,682 | $ 90,404 |
| 2003-06 | $1,023,855 | $ - | $38,520 | $14,846 | $63,479 | $14,846 | $131,691 |
| 2003-09 | $ 933,544 | $143,126 | $52,070 | $13,536 | $51,698 | $13,536 | $273,967 |
| 2003-12 | $ 277,142 | $ 27,893 | $13,999 | $ 3,831 | $15,601 | $ 4,206 | $ 65,530 |
| **Total Tax Loss** | | | | | | | **$1,129,780** |
| | | | | | | | |
| | | | | | | § 7202 Total | $ 733,982 |
| | | | | | | § 7203 Total | $ 395,798 |

In the final quarters of both 2002 and 2003, Mr. Rajput over-reported wages for Altus' employees on the relevant Form 941. This meant that the total wages reported to the IRS for each of the entire calendar years was correct, as was the amount of total wages reported on each employee's W-2.

## IV. SENTENCING COMPUTATION

17.   The parties stipulate that sentencing in this case will be determined with reference to the Sentencing Guidelines, issued pursuant to Title 28, United States Code, Section 994(1), and Title 18, United States Code, Section 3553.

18.   The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d))  The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information.

7

(§6B1.4 Comm.; §1B1.4)

19. To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b)) New facts which arise or are discovered may cause a party to change its position with regard to guideline computations or sentencing. The parties' estimated guideline application is:

A. The government contends that the base guideline is U.S.S.G. §2T1.6(a), with a base offense level of 22 because the offense involved tax loss of more than $1,000,000. §2T4.1(I). Counts 1 and 2 should be grouped pursuant to §3D1.2(d), and the offense level is therefore computed on the basis of the combined tax loss from both counts. §3D1.3(b). The defendant reserves the right to challenge the grouping of Counts 1 & 2 and the resulting offense level.

B. There are no victim-related, role-in-the-offense, or obstruction of justice adjustments.

C. The adjusted offense level for Count 1 would therefore be 22.

D. The defendant should receive a 3-level reduction for acceptance of responsibility. §3E1.1(a) & (b). The resulting offense level would therefore be 19.

E. The parties understand that the defendant's criminal history computation is tentative and that the criminal history category is determined by the Court.

The defendant appears to have no criminal history points, which would place him in Criminal History Category I.

F. The career offender/criminal livelihood adjustments do not apply.

G. The guideline range resulting from the estimated offense level of (D) above, and the tentative criminal history category of (E) above, is 30-37 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of (D) above could conceivably result in a range from 30 months (bottom of Category I) to 72 months (the combined statutory maximums of Counts 1 & 2).

I. Assuming the estimated offense level of (D) above, the fine range for this offense is $6,000 to $60,000, plus applicable interest and penalties. §5E1.2(c)(3).

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

20. The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is accounted for, all pertinent sentencing factors are addressed, and the resulting sentencing range serves the interests of justice.

21. This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the United States nor

the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

10/26/06
Date

Ferren S. Rajput
Defendant

10/26/06
Date

John A. Chanin
Attorney for Defendant

10/26/2006
Date

Matthew T. Kirsch
Assistant U.S. Attorney